UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:12-cr-00027-JAW |
| | ) | |
| CAROLE SWAN, and | ) | |
| MARSHALL SWAN, | ) | |
| | ) | |
| Defendants. | ) | |

**AMENDED[1] ORDER ON MOTION FOR RELIEF FROM PREJUDICIAL JOINDER AND MOTION TO CONTINUE**

Faced with the last-minute claim by Carole Swan that she was subjected to spousal abuse by her co-defendant husband Marshall Swan, Mr. Swan moved to sever and continue the trial currently scheduled for jury selection and trial on July 8, 2013. Despite the expenditure of additional resources that would result from multiple trials, the Court agrees with Marshall Swan that Carole Swan's allegations of spousal abuse raise the likelihood that a joint trial would be highly prejudicial to him and the Court grants his motion to sever and to continue. The Court will proceed on July 8, 2013 with jury selection and trial on all charges against Carole Swan except the previously severed Hobbs Act counts.

## I.   STATEMENT OF FACTS

On February 29, 2012, a federal grand jury indicted Carole and Marshall Swan, wife and husband, on multiple allegations of criminal fraud. *Indictment*

---

[1]       This Amended Order corrects a typographical error contained in the Order on Motion for Relief from Prejudicial Joinder and Motion to Continue dated July 5, 2013 (ECF No. 144). On page six of the Order, second sentence of the first full paragraph, the Order reads "evidence of long-term spousal abuse could be not mitigated" and should read "evidence of long-term spousal abuse could not be mitigated."

1

(ECF No. 1).  After some legal rulings, a federal grand jury issued a superseding indictment on March 28, 2013.  *Superseding Indictment* (ECF No. 112).  Counts One through Three of the Superseding Indictment alleged Hobbs Act extortion against Carole Swan; there are no corresponding Hobbs Act violations against Marshall Swan.  *Id.* at 1.  Counts Four through Eight allege tax fraud and false statements against both Carole and Marshall Swan.  *Id.* at 2.  Counts Nine through Twelve allege false statements to obtain federal workers' compensation against Carole Swan; there is no corresponding allegation against Marshall Swan.  *Id.* at 2-5.  Count Thirteen alleges fraud on a program receiving federal funds against Carole Swan and aiding and abetting fraud on a program receiving federal funds against Marshall Swan.  *Id.* at 6-7.  Finally there is a forfeiture allegation against both Defendants.  *Id.* at 7.

On September 7, 2012, Carole Swan moved to sever the tax fraud and workers' compensation fraud counts from the indictment; Marshall Swan moved for relief from prejudicial joinder, claiming that each Defendant should be tried separately.  *Def. Carole Swan's Mot. to Sever Counts 4-8 and 9-12 from Indictment Based on Misjoinder Under Fed. R. Crim. P. 8(a) or Prejudicial Joinder Under Fed. R. Crim. P. 14* (ECF No. 50); *Def.'s Mot. for Relief from Prejudicial Joinder* (ECF No. 53).  The Government objected.  *Objection to Defs.' Pretrial Mots.* (ECF No. 61).  On December 12, 2012, the Magistrate Judge issued a Recommended Decision, recommending that the Court grant severance of the Hobbs Act extortion charges from the remaining charges, but deny the motion to sever Marshall Swan from the

remaining non-Hobbs Act counts of the Carole Swan trial. *Mem. of Decision on Carole Swan's Mot. to Sever and Marshall Swan's Mot. for Relief from Prejudicial Joinder* (ECF No. 86). On February 26, 2013, the Court affirmed the Recommended Decision over multiple objections. *Order Overruling the Defs.' and the Gov't's Objections to the Magistrate Judge's Order Granting in Part and Denying in Part Carole Swan's Mot. to Sever and Marshall Swan's Mot. for Relief from Prejudicial Joinder* (ECF No. 105).

On February 28, 2013, the Court held a telephone conference with counsel to discuss scheduling and, based on the logistics of this complicated case, the Court set the case ahead for trial; after further consultation, on March 5, 2013, the Court set trial to begin on July 8, 2013. *Minute Entry* (ECF No. 107); (110). As of March 28, 2013, once Superseding Indictment issued in response to the contents of the Recommended Decision, the case seemed to be ready for jury selection and trial on July 8, 2013, with Carole Swan and Marshall Swan being tried together on all counts, except the Hobbs Act counts.

On July 1, 2013, Carole Swan filed her trial brief. *Def. Carole Swan's Trial Br.* (ECF No. 133) (*Carole Swan Trial Br.*). Ms. Swan led off with a serious allegation of spousal abuse against her husband, Marshall Swan:

> The evidence she will present establishes her state of mind, including her motivations, beliefs, knowledge and understanding, and perhaps most importantly her fear and lack of control resulting from actions by her husband, co-defendant Marshall Swan . . . . This evidence will in turn establish her lack of intent to defraud various agencies of government.

3

*Id.* at 1.  She proceeded to detail allegations against her "controlling and physically abusive husband," describing his behavior as "chilling".  *Id.* at 8.  Ms. Swan admitted that "this report of abuse has not been heard earlier."  *Id.*

Marshall Swan reacted quickly to reassert his earlier demand that the cases against his wife and him be tried separately, but this time on the ground that if jointly tried, he would face allegations of spousal abuse, something that would not arise if the cases were tried separately.  Marshall Swan's lawyer, Walt McKee emailed the Court, requesting a severance and the Court immediately scheduled a telephone conference.  No one was happy. *See Minute Entry (*ECF No. 136).

The Government, having prepared to try a three-week trial with over one hundred witnesses and thousands of documents against both Mr. and Ms. Swan, faced the prospect of prosecuting only Carole Swan on only some of the counts of the Superseding Indictment, of prosecuting her again on the remaining counts of the superseding indictment, of prosecuting Marshall Swan separately, and in its prosecution of Carole Swan, of having to address the volatile issue of spousal abuse. The Government cried foul, suggesting that the late revelation of spousal abuse was strategic, perhaps a joint defense ploy to obtain separate trials.

Marshall Swan emphatically rejected any allegation of a joint stratagem and asserted that the allegations of spousal abuse came as much of a surprise to him as to the Court and the Government.  He pointed out that the spousal abuse allegations markedly changed the defense of the case from his perspective and that he had done nothing to prepare to defend such an allegation.

4

Carole Swan was struck to the quick by any notion that she had not acted fairly. She rejected the Government's claim that her new allegations were part of a common strategy and defended her late notice by saying that she gave notice as soon as she could.

Faced with the Fourth of July holiday and an intervening weekend, the Court ordered quick briefing on the issue. On July 3, 2013, Marshall Swan filed a motion for relief from prejudicial joinder. *Def. Marshall Swan's Second Mot. for Relief From Prejudicial Joinder* (ECF No. 137) (*Def.'s Mot.*). The Government responded that same day. *Gov't Resp. in Opp'n to Marshall Swan's Second Mot. to Sever on the Grounds of Prejudicial Joinder* (ECF No. 139) (*Gov't's Opp'n*). Carole Swan also wrote the Court on July 3, 2013 emphasizing that she was taking no position regarding her husband's motions and was prepared to go forward with trial on July 8, 2013. *Letter from Att'y Leonard Sharon to Hon. John A. Woodcock, Jr.* (July 3, 2013) (ECF No. 141).

## II.   THE PARTIES' POSITIONS

### A.   Marshall Swan's Motion

Marshall Swan contends that Carole Swan's allegations represent "mutually antagonistic defenses": "a jury is asked to disbelieve the core of one defense in order to believe the core of the other." *Def.'s Mot.* at 4 (citing *United States v. Flores*, 362 F.3d 1030, 1040 (8th Cir. 2006)). He worries that the spousal abuse allegations may "'introduce what is in effect a second prosecutor into a case, by turning each codefendant into each other's most forceful adversary.'" *Id.* at 5 (quoting *Zafiro v.*

5

*United States*, 506 U.S. 534, 538 (1993)).  Mr. Swan says that Carole Swan may be willing to admit the evidence blaming him and then put forward evidence that "would simply <u>never</u> be admissible against Marshall if he was tried alone."  *Id.* at 6.

Mr. Swan is also concerned about the impact of these spousal abuse charges on his Fifth Amendment rights, noting that he would be compelled "to testify to rebut the allegations about conduct that [he] is not charged with."  *Id.*  He contends that the prejudice from the proposed evidence of long-term spousal abuse could not be mitigated by instructions to the jury.  *Id.* at 7.  Finally, Mr. Swan points to the late notice of this defense, saying that to properly defend this case would take at least a month of "vigorous investigation" and he could not adequately prepare for trial on an unheralded and prejudicial issue.  *Id.* at 7-8.

## B.     The Government's Opposition

In its opposition, after reviewing the extended history of this case, the Government noted that the trial is expected to take "15 full trial days, involve about 120 witnesses - - almost all of whom are not law enforcement witnesses - - and hundreds of trial exhibits."  *Gov't's Opp'n* at 1-4.  The Government is decidedly skeptical of the claims of spousal abuse, observing that Ms. Swan and Mr. Swan have continued to live together throughout this time, that Ms. Swan has failed to produce any documents confirming that she is a victim of domestic abuse, and that she has failed to provide notice of an expert witness.  *Id.* at 4.  The Government notes that Ms. Swan's allegations of spousal abuse are merely the unsworn

assertions of her trial attorney and have not been backed up with any affidavits or sworn declarations. *Id.* at 4-5.

The Government contends that the existence of antagonistic defenses does not necessarily justify severance. *Id.* at 6. (citing *United States v. McLaughlin*, 957 F.3d 12, 18 (1st Cir. 1992)). It proposes that a limiting instruction may cure any prejudice. *Id.* The Government views Ms. Swan's allegations as a duress defense and points out that Ms. Swan must meet her "entry-level burden" of producing enough evidence to support the defense's elements. *Id.* at 7-8 (citing *United States v. Ayala*, 289 F.3d 16, 26 (1st Cir. 2002)).

The Government is concerned that Ms. Swan's allegations of spousal abuse are based purely on inadmissible evidence. *Id.* at 8. Thus, the Court could unnecessarily sever the case, requiring two trials when one would have done justice to both Defendants. *See id.* The Government points out that "neither defendant has given this Court, on the record or <u>in camera</u>, any specific or admissible evidence to meet the heavy burden of showing that there is a serious risk that a joint trial would compromise a specific trial right of Marshall or prevent the jury from making a reliable judgment about his guilt or innocence." *Id.* at 11 (internal punctuation omitted). Finally, if the Court grants the motion, the Government urges the Court to revisit its earlier ruling severing the Hobbs Act counts from the other counts. *Id.* at 12-13.

## III.   DISCUSSION

Federal Rule of Criminal Procedure 14(a) states:

7

> If the joinder of offenses or defendants in an indictment . . . appears to
> prejudice a defendant or the government, the court may order separate
> trials of counts, sever the defendants' trials, or provide any other relief
> that justice requires.

FED. R. CRIM. P. 14(a). The narrow question here is whether Marshall Swan would be prejudiced from a joint trial with his wife Carole, and if so, whether the prejudice requires a severance. The Court reluctantly concludes that the potential prejudice against Marshall Swan is so severe that his motion to sever and continue must be granted.

The prejudice against Marshall Swan is clear. If his case were tried separately, his wife's allegations of spousal abuse would be inadmissible and the jury would focus on whether the Government had proven its criminal charges against him beyond a reasonable doubt. However, if his case is tried with his wife, the jury will likely hear her contention that Marshall Swan emotionally and physically abused her and Marshall Swan will therefore be compelled to defend himself not only against the prosecutor's case against him but also his wife's case against him. Furthermore, Carole Swan's allegations, at least as set forth in her Trial Brief, are dramatic, including "black eyes, bruised ribs, and clumps of hair being pulled from her head as she was dragged from room to room" and a "paranoid regime aimed at tracking Carole's slightest movements." *Carole Swan Trial Br.* at 9. If the jury were to hear this evidence against Marshall Swan, there is the risk that they would convict him not because he committed the charged crimes of federal criminal fraud but because they believe he committed uncharged crimes of spousal

abuse, or at least that their ability to judge him fairly on the merits would be compromised.

Other court decisions on similar issues, although helpful, are tied to the facts in the individual case. *See United States v. Celestin*, 612 F.3d 14, 17, 19 (1st Cir. 2010) (noting that "severance is warranted 'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence'") (quoting *Zafiro*, 506 U.S. at 539). Despite the Government's citation to cases supporting its argument that antagonistic defenses between co-defendants do not per se require severance, whether to sever is fact-specific and the Court concludes that the facts in this case require severance. *Gov.'s Opp'n at 6; see United States v. Breinig*, 70 F.3d 850, 851-54 (6th Cir. 1995) (reversing the district court's denial of a husband's motion to sever his trial from that of his co-defendant ex-wife given that his ex-wife claimed that she did not have the requisite mens rea to commit tax evasion as she "was dominated and controlled" by her ex-husband and presented "dramatic evidence of [his] bad character" at trial); *cf. McLaughlin*, 957 F.2d at 14-15, 17 (affirming the district court's denial of the defendant's motion for severance, which was made "long after the trial began", in a bank fraud conspiracy case where the defendant asserted that he was the victim of his co-defendant's own fraudulent scheme). The Court is not convinced that a jury instruction limiting the jury's use of this evidence would be successful and in any event the risk of prejudice against Marshall Swan would evaporate with separate trials.

The Court is concerned about the expense, time and trouble of three separate trials, but where the basic fairness of the trial is at issue, the Defendant's right to a fair trial must trump the extra expense. The Court is also aware, as Carole Swan acknowledged, that she elected to reveal these allegations at the last moment. The Government is suspicious that the springing of claims of spousal abuse is part of a joint defense strategy. Certainly, to the extent each Defendant wishes to blame the other, it is easier to point an accusatory finder at an empty chair. But the defense attorneys have steadfastly denied it and the Court accepts their representations.

As to the Government's concerns about whether Carole Swan will be able to present her claims of spousal abuse, the Court is faced with a dilemma. If it allows the joint trial to go forward and Carole Swan does present sufficient evidence to generate her accusations, the prejudice to Marshall Swan will ensue, and if she does not generate sufficient evidence of her claims, the prejudice to Marshall Swan will not occur. Yet the Court cannot make this determination without going to trial. If the Government is wrong and Carole Swan's accusations against Marshall Swan are allowed to go forward, it will be Marshall Swan who will bear the risk of an unfair verdict.

Finally, the Court declines to revisit its earlier decision to sever the Hobbs Act counts. During the telephone conference, the Court itself questioned whether Carole Swan's earlier claim that she would like to assert her Fifth Amendment rights against some but not all of the pending charges would still apply since she would likely have to take the stand to present the spousal abuse allegations.

10

However, Attorney Sharon reiterated his client's position that she might wish to remain silent and present her allegations of spousal abuse through other witnesses. Again, the Court cannot know what evidence Ms. Swan anticipates presenting on the issue of spousal abuse but the Court continues to accept defense counsel's representation concerning his client's likely assertion of her Fifth Amendment privilege.

## IV.   CONCLUSION

The Court GRANTS Defendant Marshall Swan's Second Motion for Relief from Prejudicial Joinder (ECF No. 137) and his Motion to Continue (ECF No. 138). On Monday, July 8, 2013, the Court will proceed with jury selection and trial of the pending counts against Carole Swan with the exception of the Hobbs Act claims.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 8th day of July, 2013